```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
                         MIAMI DIVISION
                   CASE NO. 17-cr-20604-CMA


  UNITED STATES OF AMERICA,        Miami, Florida

          Plaintiff,               January 17, 2020

     vs.                           9:39 a.m. to 9:53 a.m.

  ALEX DUVAN SALAZAR VILLAREAL,    Courtroom 12-2

          Defendant.               (Pages 1 to 12)
  _____

                            SENTENCING
            BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                  UNITED STATES DISTRICT JUDGE

  APPEARANCES:

   FOR THE GOVERNMENT:     ROBERT J. EMERY, ESQ.
                           Assistant United States Attorney
                           99 Northeast Fourth Street, Suite 700
                           Miami, FL  33132-2131
                           (305) 961-9000
                           robert.emery@usdoj.gov

   FOR THE DEFENDANT:      JOAQUIN MENDEZ, JR., ESQ.
                           Joaquin Mendez, P.A.
                           251 Valencia Avenue, Unit 141447
                           Coral Gables, FL  33114-6959
                           (305) 375-0886
                           jm@jmendezlaw.com

   Also Present:           James Thomas, USPO
                           Leticia Matas, Interpreter
                           Maria Carmen Fernandez, Interpreter

   REPORTED BY:            STEPHANIE A. McCARN, RPR
                           Official Court Reporter
                           400 North Miami Avenue
                           Twelfth Floor
                           Miami, Florida 33128
                           (305) 523-5518
                           Stephanie_McCarn@flsd.uscourts.gov
```

**I N D E X**

**WITNESSES**

| | |
|---|---|
| **WITNESSES FOR THE GOVERNMENT:** | **Page** |
| **WITNESSES FOR THE DEFENDANT:** | **Page** |

| **EXHIBITS IN EVIDENCE** | **MARKED** | **ADMITTED** |
|---|---|---|

**MISCELLANEOUS**

| | **Page** |
|---|---|
| Proceedings......................................... | 3 |
| Court Reporter's Certificate....................... | 12 |

```
 1         (The following proceedings were held at 9:39 a.m.)
 2             COURT SECURITY OFFICER:  All rise.
 3             THE COURT:  Good morning.  Please be seated.
 4             Please state your appearances.
 5             MR. EMERY:  Good morning, Your Honor.  Robert Emery on
 6   behalf of the United States.
 7             THE COURT:  Good morning.
 8             MR. MENDEZ:  And good morning, Your Honor.
 9   Joaquin Mendez on behalf of Mr. Salazar, who's present before
10   the Court with the assistance of a court interpreter.
11             THE COURT:  Good morning.
12             And good morning, Mr. Salazar.
13             And from Probation.
14             PROBATION OFFICER:  Good morning, Your Honor.
15   James Thomas.
16             THE COURT:  Good morning.
17             Mr. Salazar, we are here for your sentencing hearing.
18   Have you had the opportunity of reviewing with your attorney
19   the presentence investigation report and your sentencing
20   memorandum as well as exhibits that were filed on your behalf?
21             THE DEFENDANT:  Yes, Your Honor.
22             THE COURT:  I'll hear first from the Government, then
23   from Defense counsel, and then from you, Mr. Salazar.
24             MR. EMERY:  Thank you, Your Honor.
25             Your Honor, pursuant to the plea agreement for the
```

1  Government agreed to recommend low end of the guidelines, which
2  is 135 months, that's what the Government is asking for in this
3  case.
4           The Defendant is being held responsible for 1,553
5  kilograms of cocaine, which obviously is a large amount of
6  cocaine, and that -- that cocaine was intended and headed
7  towards the United States.  This Court is well aware of the --
8  the dangers and the problems that the drugs cause on the
9  streets of this country, in particular in Miami, and also all
10 the other issues associated with drug trafficking, the crime in
11 the United States, etc., as well as corruption, people that are
12 corrupted result of the enormous amount of money that is
13 involved in the drug trafficking.
14          Also, Your Honor, this Defendant had, while he was not
15 at the upper echelon of the drug-trafficking organization, and
16 as I was talking to Defense counsel before, I agree that he's
17 on the lower echelon of the conspiracy here, but -- as far as
18 those who were charged.
19          But when you look at the overall conspiracy, he was --
20 I mean, he definitely has a higher level than the boat guys.  I
21 mean, he's -- he's the one who's coordinating the boat guys
22 that are going out that are going to be delivering this cocaine
23 to the United States.  And as Your Honor knows, you know,
24 there's a difference between the boat guys that show up that
25 are typically very poor, uneducated fisherman, and who I've

1  seen, you know, in -- you know, should -- and those people
2  should definitely get the -- a lower sentence than somebody
3  like this individual.
4      So therefore in the scheme of responsibility and
5  culpability and under the 3553(a) factors, specific deterrence,
6  general deterrence and the nature and characteristics of the
7  Defendant and also this offense, you know, Your Honor, that's
8  why the Government thinks that the -- he should get 135 months.
9  The Government did agree to safety valve in recognition of his
10 position already in the -- in the conspiracy.
11     Thank you.
12     THE COURT:  Thank you.
13     I'll hear from Defense counsel.  Mr. Mendez.
14     MR. MENDEZ:  Thank you, Your Honor.
15     Judge, I welcome the Government's recognition that
16 Mr. Salazar is -- occupies in the lower levels of this
17 indictment.  I agree that in the grand scheme of things and
18 certainly in those cases in which I've been appointed to
19 represent the actual persons on the boat, they seem to be more
20 impoverished, more destitute, more desperate, and maybe more
21 fungible.  And that's why I did not ask for a minor role in
22 this case, in recognition of the fact that if you look at the
23 whole scheme of things, sometimes there are people that occupy
24 a lower level.  However, my client had no decision-making
25 authority, no leadership responsibility, that's why he

qualified for safety valve.

I would maybe quarrel with the choice of the word "coordination." What my client did, according to the safety valve statement that he provided and as reflected in the PSI, was really relaying information that he knows someone who knows someone who knows someone who knows the guy who owns the dope. And that's usually how the guys who own the dope want it to be. And it's also people in his little town, in that area, tend to be the ones who are able to see the -- whether the boats have left and what have you.

So I would not describe his role as coordinating the movement of product but rather as relaying information concerning the movement of product. But I think we agree that he's in a non-leadership role.

There are other factors that I think Your Honor could take into account in arriving at the appropriate sentence. And you may have sentenced people like Mr. Salazar before, no two individuals are identical, but people who occupy similar positions in these types of organizations. And in addition to the limited role that he played, I'd like Your Honor to take into account the fact that he did not drag his feet in any way, shape or form. He did not resist extradition when he arrived here, and shortly after I was appointed, which was after he was arraigned, he let me know, after I satisfied myself that there was evidence to support the charges against him, that he wished

1  to plead guilty and cooperate.
2          He was debriefed, provided information, which may or
3  may not eventually result in the Government assessing his
4  cooperation as -- when constituting substantial assistance, but
5  one never knows.  But it was truthful, it was complete, and of
6  course resulted in the Government agreeing that he qualified
7  for safety valve.
8          Never been in trouble with the law before.  Modest
9  origins.  That is reminiscent of other people who appear before
10 this Court, but it's certainly true of Mr. Salazar.  And the --
11 one other factor that sometimes Courts take into account in
12 addition to what I've mentioned are the conditions that he --
13 of his incarceration in Colombia.
14         I filed a report describing some of those conditions.
15 I've heard them described as worse by people who were there.
16 And it also depends on whether you are someone who's well off
17 or someone who's like Mr. Salazar.
18         So I'm told that some of the people who are pretty
19 well off actually don't suffer the indignities and the
20 deprivations that I've described as being characteristic of
21 incarceration in the -- those, you know, units at -- at
22 La Picota that people like Mr. Salazar occupy.
23         So with those factors in mind, I'd ask Your Honor to
24 consider a sentence along the lines that I've heard Your Honor
25 sometime imposes in these situations, which I hope will apply

```
 1   to Mr. Salazar will be substantially below the 10-year
 2   mandatory minimum, which doesn't apply.  And so I -- we -- I
 3   leave it at that, Your Honor.
 4            And you've seen some of -- some of the letters from
 5   the family.  As is often the case, you think they're
 6   describing -- but that's how they know him.  Nobody -- everyone
 7   is surprised.  Everyone is disappointed that he's in this
 8   situation.  They don't know him as a drug dealer.  He's never
 9   been a drug dealer.  They know him as someone who helps the
10   family, he's a good dad, a good brother, and a good son.  And
11   that's the fellow that he's known to be in his hometown of
12   Tumaco.
13            THE COURT:  Thank you very much.
14            Mr. Salazar, is there anything you would like to say
15   before I announce your sentence?
16            THE DEFENDANT:  Yes, Your Honor.
17            Well, that I'm very sorry over what's happened.
18   Unfortunately, sometimes we find ourselves in very difficult
19   situations, and here I am facing what I've done and trying to
20   help authorities resolve this in the best way possible.
21            That is all, Your Honor.
22            THE COURT:  Thank you, Mr. Salazar.
23            I've carefully reviewed, of course, the presentence
24   investigation report and your attorney's sentencing memorandum,
25   as well as the exhibits filed in support of you and of a low
```

1   sentence.  The advisory guidelines here recommend a sentence of
2   between 135 to 168 months imprisonment given your offense level
3   under the guidelines and your criminal history category.  As I
4   said to you during our plea colloquy, Mr. Salazar, that would
5   be the first step in attempting to arrive at a sentence that is
6   sufficient but not greater than necessary to achieve the
7   objectives of sentencing.
8            The next step in the process, of course, is to apply
9   the factors in 18 U.S. Code, Section 3553.  Those include, for
10  example, your personal history and characteristics, which are
11  addressed in the report, as well as the memorandum.  And you,
12  like others in your situation who come before the Court for
13  this particular crime are by and large South Americans of
14  little means and resources living under vary poor socioeconomic
15  conditions, who are lured and tempted to participate in the
16  activities that bring you before the Court.
17           The sentence I impose should promote respect for the
18  law, it should provide deterrence, it should reflect upon the
19  seriousness of the offense conduct, and should not result in
20  unwarranted sentencing disparity among those similarly
21  situated.
22           Giving careful consideration to those factors, I am
23  persuaded that a sentence below the bottom of the advisory
24  guidelines range is sufficient and not greater than necessary
25  to achieve the objectives of sentencing.  Therefore, it is the

```
 1    judgment of the Court, Mr. Salazar, that you are committed to
 2    the Bureau of Prisons to be imprisoned for 84 months as to
 3    Count 2.
 4              I find that you're not able to pay a fine, therefore
 5    no fine is imposed.
 6              Upon release from imprisonment, you will be on
 7    supervised release for two years as to Count 2.  Within 72
 8    hours of release, you will report in person to the Probation
 9    office in the district to which you are released.
10              While on supervised release, you will comply with the
11    mandatory and standard conditions of supervision.  Those
12    include not committing any crimes, being prohibited from
13    possessing a firearm or other dangerous device, not unlawfully
14    possessing a controlled substance, and cooperating in the
15    collection of DNA.
16              You will also comply with the following special
17    conditions:  You will surrender to Immigration for removal
18    following imprisonment.  You will comply with the permissible
19    search requirement and the unpaid restitution fines or special
20    assessments that are noted in Part F of the presentence
21    investigation report.  You must pay the United States a special
22    assessment of $100.
23              Now that the sentence has been imposed, does the
24    Defendant or his attorney object to the Court's findings or the
25    manner in which the sentence was announced?
```

```
 1            MR. MENDEZ:  No, ma'am.
 2            THE COURT:  Mr. Salazar, you have the right to appeal
 3   the sentence.  Any notice of appeal must be filed within 14
 4   days after entry of the judgment.  If you're unable to pay the
 5   cost of an appeal, you may apply for leave to appeal in forma
 6   pauperis.
 7            Are there any counts that need to be dismissed?
 8            MR. EMERY:  Yes, Your Honor.  The remaining counts of
 9   the superseding indictment as they pertain to this Defendant.
10            THE COURT:  And those are dismissed.
11            MR. EMERY:  Thank you, Your Honor.
12            THE COURT:  And, Mr. Mendez, did you want me to
13   include a recommendation as to placement?
14            MR. MENDEZ:  Yes, Your Honor.  They seem to end up in
15   McRae, Georgia, and that's absolutely fine with my client.  So
16   if we can recommend that, I think that might be one
17   recommendation the BOP follows.
18            THE COURT:  All right.  I'll include that
19   recommendation then.
20            MR. MENDEZ:  Thank you, Judge.
21            MR. EMERY:  Thank you, Your Honor.
22            Mr. Salazar, good luck to you and to your family.
23            THE DEFENDANT:  Thank you very much, Your Honor.
24            THE COURT:  You all have a good day.
25            COURT SECURITY OFFICER:  All rise.
```

```
 1      (The proceedings adjourned at 9:53 a.m.)
 2
                         C E R T I F I C A T E
 3

 4      I hereby certify that the foregoing is an

 5   accurate transcription of the proceedings in the

 6   above-entitled matter.

 7

 8
     _01/11/21__       [signature: Stephanie A. McCarn]
 9       DATE          STEPHANIE A. McCARN, RPR
                       Official United States Court Reporter
10                     400 North Miami Avenue, Twelfth Floor
                       Miami, Florida 33128
11                     (305) 523-5518
```